Joseph M. Blew and Albertice Blew v. Commissioner. Joseph Miller Blew, Jr., and Margaret R. Blew v. Commissioner.
Blew v. Commissioner
Docket Nos. 64617, 64618.
United States Tax Court
T.C. Memo 1958-220; 1958 Tax Ct. Memo LEXIS 4; 17 T.C.M. (CCH) 1081; T.C.M. (RIA) 58220; December 31, 1958
*4 Petitioners are members of a partnership engaged in furnishing architectural services under the firm name of J. M. Blew & Son. In the taxable year 1954, the partnership entered into contracts with two school districts in Pennsylvania to render architectural services in the construction of public school buildings. The contracts provided the manner in which Blew & Son was to be paid for its services. The partnership subcontracted a part of the work to Ewing Co., architects. During the taxable year Ewing Co. completed working drawings and specifications which it was to do. Thereupon the school districts paid to Blew & Son $57,440.81 in accordance with the terms of the contracts. Blew & Son agreed to pay Ewing Co. $58,901.78 (or $1,460.97 more than it received) for its work. Later in the same year Ewing Co. was required by Blew & Son to revise and supplement the working drawings and specifications which it had made. And by agreement between the parties, $10,443.07 of the $58,901.78 was not paid to Ewing Co. in 1954, but was deferred to a later period. Held, the partnership of Blew & Son, being on the cash basis, properly included the entire $57,440.81 in its gross income for 1954. Held, *5 further, the partnership, in computing its net income for 1954, improperly deducted the $10,443.07 which it did not pay to Ewing Co. in that year. The Commissioner is sustained in his disallowance of the deduction claimed. John P. Knox, Esq., Girard Trust Building, Philadelphia, Pa., for the petitioners. Christopher J. Ray, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These proceedings have been consolidated. *6 In Docket No. 64617, the Commissioner has determined a deficiency in petitioners' income tax for the year 1954 in the amount of $1,194.10. The deficiency is due to two adjustments made by the Commissioner to the income as reported by petitioners on their joint return as follows: (a) Partnership income
$6,004.87
(b) Standard deduction
515.63 Adjustment (a) is explained in the deficiency notice as follows: "(a) Examination of the books and records of the partnership J. M. Blew & Son, A.I.A., discloses that your share of the distributable income for the year 1954 is $10,926.48. Inasmuch as you reported $4,921.61, your taxable income has been increased by the difference of $6,004.87, * * *" The principal adjustment to the amount of partnership income is explained in the deficiency notice as follows: "1. The deduction of $58,901.74 claimed for professional services due an associate, the George M. Ewing Company, has been disallowed to the extent of $10,443.03 because it has not been established that the amount in excess of $48,458.71 was paid during the taxable year. Inasmuch as the partnership kept its books and reported its income on the cash receipts and disbursements *7 basis, it was not entitled to deduct the unpaid portion of the fees as a business expense for the year 1954." In Docket No. 64618, the Commissioner has determined a deficiency in petitioners' income tax for the year 1954 of $1,756.34. The deficiency is due to two adjustments made by the Commissioner to the net income as reported by petitioners on their return. These adjustments are: (a) Partnership distribution
$6,004.88
(b) Depreciation
717.35 Adjustment (a) is explained in the deficiency notice in the same manner as the similar adjustment was explained in Docket No. 64617. The petitioners, in both docket numbers, have identical assignments of error which are, in effect, as follows: "1. The payments totaling $57,440.81 received by Blew & Son from the three school contracts were for services performed by Ewing Co. and should not have been returned by Blew & Son in its partnership income tax return as a part of its gross income. 2. In the alternative, to properly reflect Blew & Son's correct net income for 1954, the deduction in the amount of $10,443.07 should be allowed." Findings of Fact Some of the facts have been stipulated and are incorporated herein *8 by reference. The petitioners, Joseph M. Blew and Albertice Blew, are husband and wife residing in Upper Darby, Pennsylvania. The return for the year involved was filed with the director of internal revenue, Philadelphia. The petitioners, Joseph Miller Blew, Jr., and Margaret R. Blew, are husband and wife residing in Media, Pennsylvania. The return for the year involved was filed with the director of internal revenue, Philadelphia. At all times herein pertinent, petitioners Joseph M. Blew and Joseph Miller Blew, Jr., were the only partners in a firm of architects of J. M. Blew & Son, A.I.A., hereinafter referred to as Blew & Son. This partnership has its offices in Media, Pennsylvania. During 1954, the partnership had three outstanding contracts for architectural services that are pertinent to the issues raised in the petitions. Two of the contracts were with the school district of the City of Chester, Pennsylvania, and one was with the school district of the Borough of Bristol, Pennsylvania. The fees received by Blew & Son for these services were based upon a percentage of the cost of construction of the new schools. One of the Chester contracts and the Bristol contract called *9 for a fee of 6 per cent of the cost of construction; the other Chester contract called for a fee of 5 1/2 per cent of the cost of construction. The architectural services under these contracts fell into three separate categories: (a) preliminary studies and drawings, (b) working drawings and specifications, and (c) supervision of construction. Blew & Son was paid a lump sum at the completion of the preliminary studies and drawings, a lump sum at the completion of the working drawings and specifications, and was paid in installments for supervision during the progress of the construction. These three school contracts required architectural services substantially greater than Blew & Son customarily performed alone. For this reason the Blew & Son partnership negotiated in the spring of 1954 for the professional assistance of George M. Ewing Co. (hereinafter referred to as Ewing Co.), a firm of architects and engineers with offices in Philadelphia. By their agreement, Blew & Son and Ewing Co. divided the architectural services so that Ewing Co. was to prepare the working drawings and specifications and Blew & Son was to supervise the construction. Blew & Son alone completed the preliminary *10 studies and drawings. For their services in preparing the working drawings and specifications, Ewing Co. was to be paid approximately 3 per cent of the cost of construction of the schools, or approximately one-half of the fees received by Blew & Son under the contracts. Their agreement with respect to the division of fees was subject to final revision in order to take into consideration the time spent by, and costs of, Ewing Co. in the performance of its services. Ewing Co. had no agreement with either of the school districts that it was to render architectural services on any of the jobs. Ewing Co.'s agreement was with Blew & Son. It was agreed between Ewing Co. and Blew & Son that the former would be paid for its services by Blew & Son after the school districts had paid Blew & Son the fees due it at the completion of the working drawings and specifications. On or about October 25, 1954, Blew & Son received the sums of $16,167.34 and $16,883.74 for the working drawings and specifications under the two Chester contracts. On or about December 22, 1954, Blew & Son received the sum of $24,389.73 for the working drawings and specifications under the Bristol contract. These amounts *11 totaled $57,440.81. Blew & Son agreed to pay Ewing Co. $58,901.78 for its work, or $1,460.97 more than blew & Son received for the work. In the fall of 1954, it became necessary for Ewing Co. to revise and supplement certain drawings it had prepared for the three school contracts. It was agreed by the parties that Blew & Son would withhold payment of $11,392.44 (of the $58,901.78) subject to Ewing Co.'s completing the revisions and amplifications of the working drawings and specifications and until the complete satisfaction of the work of Ewing Co. was demonstrated to Blew & Son. It was agreed that $11,392.44 would be paid in 12 installments. One installment of $949.37 was paid in 1954 and the balance of $10,443.07, the amount of the deduction which was disallowed in 1954 by respondent, was paid in 1955 and 1956. The necessity for the revisions and supplements in the working drawings and specifications made by Ewing Co. was due entirely to the workmanship and performance by Ewing Co. of its part of the school contracts, and in no wise involved the work of Blew & Son. But for the revisions and supplements that Ewing Co. had to make in its work Blew & Son would have paid Ewing Co. *12 its final portion of fees, $10,443.07, in 1954. Blew & Son employs the cash basis of accounting, and its fiscal year is the calendar year. It received all of the fees paid for the working drawings and specifications under the three school district contracts during 1954, and returned said fees, in the amount of $57,440.81, in its partnership return of income for 1954. Blew & Son was not obligated to pay Ewing Co. the latter's portion of the architectural fee until Blew & Son was paid by the school districts for the second or working drawings phase of the contracts. The financial records of Blew & Son consist of the stub portion of the checkbook upon which all receipts and disbursements of monies are recorded and a running balance kept. All receipts are deposited in the partnership's one bank account, a checking account, which, in 1954, was maintained at the First National Bank of Media. When the three amounts of monies received on the three contracts described above were received by Blew & Son, they were entered as receipts on the stub portion of the checkbooks and deposited in the partnership's bank account. During the period August 31, 1954, through the end of 1954, the lowest *13 bank balance in the checking account of Blew & Son was $16,821.44, and during much of this period the balance was approximately $40,000 and $50,000. During this period Blew & Son was possessed of ample funds to have paid Ewing Co. the amount of $10,443.07 had the former elected to do so. However, in view of its revised agreement with Ewing Co. it was under no obligation to do so. The amount of $10,443.07, the balance of Ewing Co.'s fee which was not paid in 1954, was not segregated in a separate or special bank account, but remained in Blew & Son's checking account. The amount was not placed in a separate account because petitioner Joseph Miller Blew, Jr., had no idea that a separate account was advisable or necessary. At the end of 1954, Joseph Miller Blew, Jr., prepared a 9-page balance sheet in his own handwriting, as was his annual custom, covering the operations of Blew & Son's business for the year 1954. In this statement the item of $10,443.07, which was the balance of Ewing Co.'s fee withheld, was treated as an expense for "professional services." In computing the net income and profits from the partnership of Blew & Son for the year, the item of $10,443.07 was treated *14 as an expense and the profits and net income were reduced accordingly. It was this deduction of $10,443.07 above described which the Commissioner disallowed in his determination of the deficiencies. Opinion BLACK, Judge: In their petitions the taxpayers assign error as to this determination of the Commissioner and, as stated in our preliminary statement, their assignments of error boil down to a main contention and should we deny that main contention, then the taxpayers urge an alternative contention. We shall now take up and decide these respective contentions. Petitioners' first and main contention is that the partnership of Blew & Son erred in reporting on its partnership return as gross income the $57,440.81 which it received in 1954 under its contracts with the two school districts. Although the partnership did, in fact, report the full amount of $57,440.81 in its gross income for 1954, it is entirely within its rights to now say that it erred in doing so. Whether it did err in doing so is a matter for us to decide under the facts which are really not in dispute. Since the taxable year involved is the calendar year 1954, the Internal Revenue Code of 1954 is applicable. *15 The applicable section of that Code to the issue we have here is section 446 printed in the margin. [1]
It has been stipulated that: "Blew & Son employs the cash basis of accounting, and its fiscal year is the calendar year." Such being the stipulated facts, *16 it seems clear that the partnership in its business used the method of accounting permitted by section 446(c)(1) and that it was correct in returning as a part of its gross income the $57,440.81 which it received in 1954 from the three school contracts for the working drawings and specifications. This is undoubtedly true unless the transactions fall under the exception provided in section 446(b) where the statute says: "or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income." Petitioners have not convinced us that the cash method of accounting used by Blew & Son in its business does not clearly reflect its income within the meaning of the applicable statute. Petitioners, in effect, argue that the partnership was a mere conduit through which the $57,440.81 in question was received on behalf of Ewing Co., that the latter was the beneficial owner of this income, and that the partnership erred in including that amount in the gross income of the partnership. We are unable to agree with this contention. In the first place, Ewing Co. was not *17 a party to the contracts with the school districts. It was a subcontractor with Blew & Son and it was to the latter that Ewing Co. looked for its compensation. Blew & Son received this $57,440.81 in 1954 without any strings attached to the payments and it deposited the money in its own bank account with the unrestricted right to use the money in its business in any manner it saw fit. This being true, it seems to us that the $57,440.81 must be included in the gross income of the partnership in 1954; it had no right to defer it. Petitioners, in support of their contention that the $57,440.81 should not be included in the gross income of the partnership for 1954, strongly rely on our decision in . We think the facts in that case clearly distinguish it from the instant case. The following paragraph which we quote from the Eagleton case, p. 562, will demonstrate, we think, the difference between that case and the one we have here: "It is elementary that the purpose of the income tax law is to tax income actually derived rather than constructively received, and it is assumed that individuals are not to be penalized for being the agency through *18 which income is derived for someone else. See . It has been held that the purpose of the income tax laws is to tax income to the person having the beneficial interest therein but not the mere collector or conduit of income belonging to another. See . Hence, where a person receives money as trustee for another, the tax should not fall on the collector but on the person who has a beneficial interest therein, or if income is produced by property belonging to individuals jointly, and total income is collected by one, it has been held that the individual receiving the total income is taxable only on the portion in which he individually had the beneficial interest, the portion paid his associate of associates being received merely in trust for such party or parties. See ." As we have already pointed out, the partnership of Blew & Son did not receive the $57,440.81 as agent for Ewing Co. nor did the partnership receive it in trust for Ewing Co. The partnership received it because the money *19 was due it under its contracts with the school districts. Of course, it is true that Blew & Son was indebted to Ewing Co. for the work the latter had done in preparing the working drawings and specifications but that fact would not warrant Blew & Son's excluding the sums received from their gross income. We hold against petitioners on their contention 1. We must next rule on petitioners' alternative contention which is that the partnership, in computing its net income for the calendar year 1954, should be allowed to deduct the $10,443.07 which it did not pay Ewing Co. in 1954. It is perfectly true, as petitioners argue in their brief, that the reason the partnership of Blew & Son did not pay this $10,443.07 to Ewing Co. in 1954 was because some elements of the work that Ewing Co. had done on the drawings and specifications had proven inadequate and unsatisfactory and needed to be revised and supplemented by Ewing Co. This, Ewing Co. agreed to do and also agreed that the payments due it under its subcontract with the partnership would be postponed beyond 1954 to the extent of $10,443.07. This was done and Ewing Co. did not receive this balance until 1955 and 1956. But it seems to *20 us that there is nothing in this agreed postponement which would entitle the partnership to take the deduction in 1954. The partnership of Blew & Son, being on the cash basis of accounting, it seems clear to us could only take the deductions in 1955 and 1956, when the amounts were actually paid. It may well be, as petitioners argue in their brief, that to deny the partnership of Blew & Son the deduction of the $10,443.07 in 1954 will result in the partnership's having a larger net income in 1954 proportionally than in 1955 and 1956, when the payments aggregating this amount were made. But regardless of whether that is true or not, it does not affect the situation. The partnership, being on the cash basis, must take its deductions from gross income in the year when payments were made by it. As we have already pointed out, petitioners have made no showing that the partnership's method of accounting comes within the exceptions provided by section 446(b) of the 1954 Code. We hold against petitioners' alternative contention and sustain the Commissioner in his disallowance of the $10,443.07. Decisions will be entered for the respondent. Footnotes
1. SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING. (a) General Rule. - Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. (b) Exceptions. - If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income. (c) Permissible Methods. - Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting - (1) the cash receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate.↩